UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL ABARY,<br><br>    Plaintiff,<br><br>v.<br><br>BMW OF NORTH AMERICA, LLC et al.,<br><br>    Defendants. | Case No. 19-cv-00087-JD<br><br>**ORDER RE ARBITRATION AND LIFTING STAY**<br><br>Re: Dkt. No. 53 |

In January 2019, Michael Abary and two other plaintiffs sued defendant BMW of North America, LLC ("BMW") for breach of warranty and violation of California consumer protection statutes in connection with BMW vehicles they bought from a dealership in Escondido, California. Dkt. No. 1. Abary is the only plaintiff left in the case. Dkt. Nos. 26, 42. He filed an amended complaint in March 2019, which alleges that his car had engine defects that caused an excessive consumption of motor oil. Dkt. No. 25. The Court denied BMW's motion to dismiss the amended complaint. Dkt. No. 41.

BMW now asks to compel arbitration as a third-party beneficiary of an arbitration clause in a Retail Installment Sale Contract between Abary and the dealership. Dkt. No. 53. As the clause states in pertinent part:

> Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Clause, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action.

Dkt. No. 53-3 at 3. The main points of dispute are whether BMW has standing to enforce

the arbitration clause as a third-party beneficiary of the contract, or under the doctrine of equitable estoppel, and if so, whether BMW waived enforcement of the arbitration clause by litigation conduct here.

The parties' familiarity with the record is assumed, and the motion is denied. For purposes of this motion, the Court assumes without deciding that BMW may enforce the arbitration clause in the dealership contract. This is a generous assumption because BMW's legal arguments are doubtful. It relies entirely on non-binding state and federal court decisions, and out-of-circuit cases, *see* Dkt. No. 53 at 7-11, in lieu of Ninth Circuit precedent that squarely fits this case. BMW failed to mention in its opening brief our circuit's decision in *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122 (9th Cir. 2013), which dismissed a similar effort by a nonsignatory vehicle manufacturer to compel arbitration under a dealership contract. The circuit panel rejected the third-party beneficiary and equitable estoppel arguments that BMW makes here. *Id.* at 1126-32. BMW acknowledged *Kramer* only after Abary raised it in opposition to the motion. BMW makes a glancing effort to distinguish *Kramer* in its reply brief, Dkt. No. 55 at 3, 6-7 nn. 1-2, on grounds that other courts in this District have rejected. *See, e.g.*, *Schultz v. BMW of N. Am., LLC*, --- F. Supp. 3d ---, 2020 WL 4012745, at *4-5 (N.D. Cal. 2020). The Court joins the reasoning in those decisions.

Any rights to compel arbitration that BMW might have had were waived by its litigation conduct in court. The standards for determining waiver are well established. *See generally Smith v. SMX, LLC*, No. 18-cv-01903-JD, 2019 WL 720984, at *1 (N.D. Cal. Feb. 20, 2019). Abary's dealership agreement designates the Federal Arbitration Act ("FAA") as the law applicable to its terms. *See* Dkt. No. 53-3 at 3; *see also Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) ("Under the [FAA], arbitration is a matter of contract, and courts must enforce arbitration agreements according to their terms."). Like other contractual rights, the right to arbitration can be waived. *Martin v. Yasuda*, 829 F.3d 1118, 1124 (9th Cir. 2016). Waiver of an arbitration agreement governed by the FAA is evaluated under federal rather than state law. *Sovak v. Chugai Pharmaceuticals Co.*, 280 F.3d 1266, 1269-70 (9th Cir. 2002). Although neither party disputes that the FAA applies, the Court notes that California law on the waiver of a contractual

right to arbitrate is in tune with federal law and uses similar standards.  *See, e.g.*, *St. Agnes Med. Ctr. v. PacifiCare of California*, 31 Cal. 4th 1187, 1196 (2003).

The party asserting a waiver "bears a heavy burden of proof" given the "strong federal policy favoring enforcement of arbitration agreements." *Martin*, 829 F.3d at 1124 (quotations omitted).  It must show: "(1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Id.* (quotation omitted).  A party that signs a binding arbitration agreement may choose to litigate or arbitrate, but not both.  It may not delay seeking arbitration until after the district court rules against it in whole or in part, or "belatedly change its mind after first electing to proceed in what it believed to be a more favorable forum." *Id.* at 1128.

That is exactly what happened here.  There is no doubt that BMW knew of its potential arbitration rights.  It catalogued in its opening brief approximately one dozen cases dating back to 2017 that involved "BMW NA's motions to compel arbitration where BMW NA was a non-signatory to similar, if not identical, arbitration clauses." Dkt. No. 53 at 3.  This not a situation where BMW suddenly discovered a hitherto unknown basis for seeking arbitration.

Despite this knowledge, BMW did not seek to compel arbitration until February 28, 2020, more than one year after Abary filed the complaint in this lawsuit in January 2019.  Dkt. Nos. 1, 53.  A good argument can be made that BMW waited even longer to seek arbitration because it knew about Abary's claims as early as September 2018, when it received pre-lawsuit demand letters from Abary's lawyer.  Dkt. No. 54-2.

During the long delay before seeking arbitration, BMW spared no effort in litigating the case here.  It filed two motions to dismiss, the first in response to the original complaint, and the second to an amended complaint.  *See* Dkt. Nos. 16, 27.  BMW sought dismissal on the merits of Abary's claims, and submitted approximately 350 pages of exhibits with the first motion, and approximately 260 pages with the second -- in total, over 600 pages for two pleadings motions. *See* Dkt. Nos. 17, 27-2 to 27-7.  It participated in case management conferences, and filed a joint case management statement detailing the scope of discovery and proposing scheduling deadlines.  Dkt. No. 34.  BMW represented in the joint statement that the case was "not suitable for reference

3

to binding arbitration." *Id.* ¶ 14. It appeared at a motion hearing to argue for dismissal, which the Court denied in a bench ruling. Dkt. No. 41. It attended a court-ordered mediation and exchanged discovery in advance of that. Dkt. No. 37 at 2; Dkt. No. 41. Abary's claims were not settled. Dkt. No. 43.

While all of this was happening, BMW made no mention of arbitration. It did not raise the topic until a case management conference in February 2020, after the Court had denied its motion to dismiss the case on the merits and after an unsuccessful mediation with Abary. It filed the motion to compel arbitration a few weeks later. Dkt. No. 53.

This record is not consistent with preserving a known right to seek arbitration. BMW actively defended itself in this court case, and gave every indication that it intended to continue doing so, until the motion to dismiss was denied and mediation did not yield a settlement. BMW offers no good reason or explanation for why it waited so long before it sought to compel arbitration. These facts point strongly to the conclusion that BMW purposefully delayed seeking arbitration in favor of litigating here.

This conduct prejudiced Abary. Undue delay in seeking arbitration "almost inevitably cause[s] the parties to expend more time, money, and effort than had they proceeded directly to arbitration." *Martin*, 829 F.3d at 1127. Prejudice also arises when a plaintiff incurs costs to contest a motion to dismiss on the merits, as Abary did here. *Newirth by and through Newirth v. Aegis Senior Communities, LLC*, 931 F.3d 935, 944 (9th Cir. 2019) (citing *Martin*, 829 F.3d at 1126, 1128). BMW makes a tentative effort to escape this rule by saying that motion to dismiss proceedings cannot result in prejudice, *see* Dkt. No. 55 at 4, but this ignores the fact that it sought dismissal on the merits, contending in both motions that Abary's claims were fatally insufficient, *see* Dkt. No. 16 at 1; Dkt. No. 27 at 1-2, and that the Court resolved the merits in Abary's favor, Dkt. No. 41. The merits dimension establishes prejudice, particularly since ordering arbitration now would unfairly force Abary "to relitigate an issue on the merits" on which he has already prevailed. *Newirth,* 931 F.3d at 944; *see also Martin*, 829 F.3d at 1128 ("[P]laintiffs would be prejudiced if the defendants got a mulligan on a legal issue it chose to litigate in court and lost."). BMW also overlooks the potential waste of judicial resources already expended in ruling on

4

1    motions and managing the case that arbitration at this late date would inflict.

2        BMW suggests that an arbitrator should decide waiver and third-party enforcement, Dkt.
3    No. 55 at 1-2, but those issues are presumptively for the courts to resolve.  *See Martin*, 829 F.3d at
4    1123-24 (waiver); *Kramer*, 705 F.3d at 1126-27 (beneficiary and estoppel claims).  This
5    presumption yields only if the parties "clearly and unmistakably provide otherwise" in the
6    contract.  *Martin*, 829 F.3d at 1123; *see also Newirth*, 931 F.3d at 940 n.8.  Nothing in the plain
7    language of the arbitration clause here makes that unmistakable statement.  *See Martin*, 829 F.3d
8    at 1124.

## CONCLUSION

The motion to compel arbitration and stay these proceedings is denied.  The stay is lifted, *see* Dkt. No. 41 at 2, and the parties are directed to file a joint proposal for a revised case management schedule by October 23, 2020.

**IT IS SO ORDERED.**

Dated:  September 29, 2020

JAMES DONATO
United States District Judge